979 F.2d 847
 142 L.R.R.M. (BNA) 2232
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CONSOLIDATION COAL COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
DISTRICT 31, UNITED MINE WORKERS OF AMERICA, Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
DISTRICT 31, UNITED MINE WORKERS OF AMERICA, Intervenor,
v.
CONSOLIDATION COAL COMPANY, Respondent.
 Nos. 92-1061, 92-1160.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1992
Decided: November 18, 1992
 
 On Petition for Review and Cross-application for Enforcement of an Order of the National Labor Relations Board.
 Argued: David J. Laurent, Polito & Smock, P.C., Pittsburgh, Pennsylvania, for Petitioner.
 Joseph John Jablonski, Jr., National Labor Relations Board, Washington, D.C., for Respondent.
 On Brief: Anthony J. Polito, Polito & Smock, P.C., Pittsburgh, Pennsylvania; Daniel L. Fassio, Pittsburgh, Pennsylvania, for Petitioner.
 Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Collis Suzanne Stocking, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Respondent.
 Peter D. Dinardi, Morgantown, West Virginia, for Intervenor.
 N.L.R.B.
 ENFORCEMENT GRANTED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Consolidated Coal Company (Consol) petitions for review of a National Labor Relations Board (NLRB or Board) order commanding it to cease and desist an unfair labor practice: withholding from District 31 of the United Mine Workers of America requested information necessary for the union to enforce a collective bargaining agreement. The Board has cross-applied for enforcement of its order. Reviewing the Board's order under § 10(f) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(f)(1988), we conclude that there was substantial evidence to support the Board's finding that Consol committed an unfair labor practice. Accordingly, we affirm the Board's findings and enforce the order against the petitioner.
 
 
 2
 * Consol is a Delaware corporation engaged in the mining, processing and sale of bituminous coal. As a member of the Bituminous Coal Operators Association, Consol has been a signatory to a series of collective-bargaining agreements with the United Mine Workers of America (the Union). In 1988 the Union and Consol entered into a collective-bargaining agreement called the National Bituminous Coal Wage Agreement of 1988 (the Agreement).
 
 
 3
 Bituminous coal production involves the inevitable depletion of coal resources at certain work locations, which results in the need to lay off employees. The Union sought to protect these laid-off workers, and consequently the 1988 Agreement between Consol and the Union included a provision entitled "Article II, Job Opportunity and Benefit Security (JOBS)." Under the JOBS provision, employees laid off from Consol's operations have certain rights to priority reemployment at Consol's other mines. The Agreement covers the operation of all coal lands and coal preparation facilities held by signatory Consol, as well as its subsidiaries and affiliates, whether in operation at the time of the Agreement or at any time thereafter. The Agreement bars the leasing or licensing of coal property by Consol to avoid the application of the JOBS provision.
 
 
 4
 On May 24, 1989, the Charleston Gazette published an article reporting Consol's receipt of the Governor's Award for Excellence in Exporting. Listed among Consol's West Virginia mines participating in the coal export market was Wolfpen Knob Development ("Wolfpen"), a "joint venture mine." According to the testimony of Union Vice-President Jerry Miller, this article first led the Union to believe that Consol was not complying with the JOBS provision of the Agreement by failing to hire laid off employees for the mine at Wolfpen. In June 1989 the Union requested names, job titles, and dates of hire for all employees at Consol's Wolfpen operation. Consol responded that Wolfpen had no operations.
 
 
 5
 Miller initiated an investigation into the relationship between Wolfpen and Consol. Miller contacted the West Virginia governor's office to determine the source of the information in the Charleston Gazette article, and learned that the information came directly from a Consol press release. Miller also discovered that in 1975 Consol and King Knob Coal Co. (a signatory to pre-1988 agreements with the Union) arranged to own a 500-acre tract of coal in Webster County, West Virginia near Erbacon. In 1981 Wolfpen was incorporated as a wholly-owned subsidiary of Consol, and Consol assigned its interest in the Erbacon tract to Wolfpen. During the same time period, King Knob assigned its interest in the tract to Juliana Mining Company (JMC). As a result of these transactions, the land once owned by Consol and King Knob, both signatory employers under prior Union agreements, was transferred to Wolfpen and JMC, neither of which was, or is, a signatory to any contract with the Union.
 
 
 6
 By letters dated January 5 and 22, 1990, the Union again requested information from Consol regarding its relationship to King Knob, JMC, and Wolfpen.* Consol responded that the Charleston Gazette article was incorrect and that Wolfpen had no operations. Consol explained that Wolfpen is a passive development company that supplies money to JMC, which is the operating company at the Erbacon site. Not satisfied, the Union renewed its information request on March 21, 1990. Consol advised the Union that neither Consol nor Wolfpen had a mine near Erbacon. Therefore, no hiring obligation under the JOBS provision properly could be asserted against Consol or Wolfpen regarding the Erbacon mine.
 
 
 7
 Faced with Consol's repeated refusals to provide the requested information, the Union filed an amended unfair labor practice charge with the Board alleging that Consol was in violation of sections 8(a)(1) and (a)(5) of the Act. The Regional Director issued a complaint, to which Consol filed an answer denying any violation of the Act.
 
 
 8
 Administrative Law Judge (ALJ) Richard H. Beddow conducted a hearing on the complaint. The ALJ concluded that Consol had violated sections 8(a)(1) and (5) of the Act by failing to provide the requested information to the Union. The General Counsel and Consol filed exceptions to the ALJ's decision. The Board affirmed the ALJ's findings and conclusions, and adopted his recommended order with minor modifications. Consolidation Coal Co., 305 N.L.R.B. No. 59 (Nov. 7, 1991). Consol filed its petition for review of the Board's decision and Order, and the Board filed a cross-petition for enforcement of its order.
 
 II
 
 9
 The question before us is simply whether the Board's findings are substantially supported by the record as a whole. See New River Indus., Inc. v. NLRB, 945 F.2d 1290, 1296 (4th Cir. 1991). An employer has an obligation to comply with a union's request for information that will assist the union in fulfilling its responsibility as the employees' statutory representative. NLRB v. Acme Indus. Co., 385 U.S. 432 (1967). Failure to provide relevant information upon request is a breach of the employer's duty to bargain in good faith and violates sections 8(a)(1) and (5) of the Act. Information is relevant if it has some bearing on the issue for which the information is requested and has probable or potential relevance to the union's duties. Pfizer, Inc., 268 N.L.R.B. 916, 918 (1984).
 
 
 10
 Here the Union sought information from Consol to support its belief that Consol is the alter ego or single employer of Wolfpen.
 
 
 11
 Mere suspicion that such a relationship existed would not render the Union's request for information relevant to the Union's duties. Bohemia, Inc., 272 N.L.R.B. 1128 (1984). Even so, the standard of relevancy is a liberal discovery-type standard. Walter N. Yoder & Sons, Inc. v. NLRB, 754 F.2d 531, 535 (4th Cir. 1985). Where a union seeks information to establish an alter ego or a single employer relationship, the union is not required to prove the existence of that relationship to obtain the requested information. It is enough that the union show relevancy by establishing "that the union [has] an objective factual basis for believing" that one entity is an "alter ego or single employer" of the other. Maben Energy Corp., 295 N.L.R.B. 149, 152 (1989). Moreover, the Board's determination of relevance is entitled to considerable deference in the courts. Florida Steel Corp. v. NLRB, 601 F.2d 125, 129 (4th Cir. 1979). In reviewing a Board's finding of relevancy, the only question for the court is whether there is substantial evidence in the record to support the Board's findings. Yoder, 754 F.2d at 535.
 
 
 12
 Here there is substantial evidence to support the Board's conclusion that the Union has an objective basis for requesting the information and that the information is relevant to the Union's duties. Consol itself represented to the State of West Virginia that Wolfpen was one of its mines. Moreover, the Wolfpen operation is listed on various public documents as "Julian Mining and Wolfpen Knob, a joint venture" doing business as Juliana Coal Company. This evidence alone is sufficient to support the Board's determination that the information requested by the Union was relevant to the Union's duties.
 
 
 13
 Consol maintains that it has provided the Union with all information in its possession germane to the Union's request, and that it has no obligation to acquire the balance of the information from any other source. Consol does not contest that it could obtain the sought information from JMC. Consol argues essentially that its right to receive information from JMC does not give rise to a duty to request such information on behalf of the Union. This argument is without merit. As the Board noted, if Consol has no direct knowledge about the sought information, Consol has a duty to seek out the data, acquiring it from the operating company JMC if necessary. See NLRB v. Borden, Inc., Borden Chem. Div., 600 F.2d 313, 318 (1st Cir. 1979).
 
 
 14
 The Board's finding that Consol violated sections 8(a)(1) and (5) of the Act by refusing to comply with the Union's request for relevant information is supported by substantial evidence in the record. The Board therefore is entitled to enforcement of its order.
 
 ENFORCEMENT GRANTED
 
 
 *
 The Union requested the following information:
 
 
 [1]
 The relationship between Consol and Wolfpen;
 
 
 [2]
 The relationship including financial and operational control among Wolfpen Knob, JMC, and Julian Coal Company;
 
 
 [3]
 The date that Juliana Coal Company commenced operations at its operating location near Erbacon;
 
 
 [4]
 An account of the nature of the operation doing business as Juliana Coal Company;
 
 
 [5]
 The identities of the officers, directors, managers, and supervisors of Juliana Coal Company; and the identities of any of those who hold positions with Consol or its subsidiaries or affiliates;
 
 
 [6]
 The number of bargaining unit employees employed at the various sites at Erbacon, West Virginia, and the names of their employer; andFC117.The identities, dates of hire and job titles of bargaining unit employees at the Erbacon sites, and an indication of which bargaining unit employees were laid off Union members, and a listing of all laid off Union Consol employees to whom offers of employment were extended